**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DUCTMATE INDUSTRIES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 2:12 – cv – 01440-AJS** |
| | ) | |
| **v.** | ) | **Judge Arthur J. Schwab** |
| | ) | |
| **FAMOUS DISTRIBUTION, INC.  d/b/a** | ) | |
| **FAMOUS SUPPLY CO. OF** | ) | **[FILED ELECTRONICALLY]** |
| **CLEVELAND, FAMOUS SUPPLY CO.** | ) | |
| **OF UNIONTOWN, FAMOUS SUPPLY** | ) | **Special Master John McIlvaine** |
| **CO. OF WASHINGTON, and** | ) | |
| **FAMOUS INDUSTRIES, INC. d/b/a** | ) | |
| **HEATING & COOLING PRODUCTS** | ) | |
| **COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DUCTMATE'S REPLY BRIEF TO DEFENDANTS' RESPONSIVE CLAIM
CONSTRUCTION BRIEF [DOC 98; FILED MARCH 14, 2014]**</u>

**-I-
<u>INITIAL COMMENT</u>**

Claim construction is a complex process for both the parties and the Court.  It is understandable that through the process of claim construction, the Court and the parties can struggle with the construction of terms.  However, in order to have the best opportunity for a valid claim construction that will be upheld, it is important for the Court to have accurate facts and accurate statements of the law in front of it.  The Defendants' Responsive Claim Construction Brief (Doc. 98) states law and facts in sound bite form.  This results in a statement being taken out of context and leading the reader to an incorrect conclusion.

<u>**Example 1: Inaccurate Principle of Law**</u>

Defendants state "**<u>it is a principle of claim construction that preamble terms are not</u>**

**<u>claim limitations</u>**," citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed.

Cir. 1999). (emphasis added) (Defendants' Br. 12).  There is no equivocation in Defendants'

statement.  *Pitney Bowes* is contrary to Defendants' principle of law and states:

> The starting point for any claim construction must be the claims themselves. Both independent claims 1 and 3 contain a **preamble** stating that they claim either a method of, or an apparatus for, "producing on a photoreceptor an image of generated shapes made up of spots . . . ." Based upon this language, the "spots", which are the subject of this dispute, "produce . . . an image of generated shapes". The "generated shapes" are, of course, the letters, numbers or other characters formed with fewer jaggies than under the prior art methods. These characters, "made up of spots", are "produced on a photoreceptor". **Thus, based upon this preamble language**, the "spots" are the constituent parts that make up the image of the desired character on the photoreceptor. The spots of light generated by the light beam cannot be the "spots" referenced in the preamble because the spots of light generated by the light beam are, it is not disputed, transient and do not themselves form the image of the desired character. The spots of discharged area created by the beam of light, however, last long enough to combine to form images of characters and they produce those images "on the photoreceptor". Accordingly,  [**17]  the language in the preamble of the claims strongly militates towards construing the claim term "spots of different sizes" to refer to the spots of discharged area on the photoreceptor, not the light spots generated by the beam of light.

> Although our initial discussion has focused on the preamble, as opposed to the remainder of the claim language, this does not undercut its significance. "**[A] claim preamble has the import that the claim as a whole suggests for it**." **If the claim preamble, when read in the context of the entire claim, recites limitations of the claim**, or, if the claim preamble is "necessary to give life, meaning, and vitality" to the claim, **then the claim preamble should be construed as if in the balance of the claim**. Indeed, when discussing the "claim" in such a circumstance, there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the "claim".  If, however, the body of the claim fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation. (emphasis added)

*Id.* at 1306 (the Court found that the preamble was necessary to give life, meaning, and

vitality to the claim and that it was essential that the Court charged with claim construction

construe the preamble and the remainder of the claim as one unified and internally consistent recitation of the claimed invention).

**Example 2: Inaccurate Statement of Fact**

The Defendants stated that Ductmate's claim construction for "snap lock mechanism" "'in the context of the claim is a <u>circular</u> duct snap lock mechanism' (emphasis added) conflicts with its own admissions in the reexam prosecution history." Defendants Brief (Doc. 98 p. 13). In an attempt to prove the conflict, the Defendants take portions of two sentences and combine them and take them out of context. When the sentences are viewed in their entirety with arguments made by Ductmate, it can be seen that Ductmate is distinguishing between circular duct snap locking mechanisms and rectangular snap locking mechanisms. Ductmate explicitly argues that the claim applies to a circular duct snap lock and not rectangular snap lock mechanisms. The above stated fact by Defendants that "Ductmate's construction conflict with its arguments" is not accurate when the documents are reviewed in their entirety. Directly beneath part of the spliced sentence taken out of context by the Defendants, Ductmate states, "**As claimed a snap locking mechanism** in **circular duct**…"(emphasis added) See July 12, 2013 Submission Under 37 CFR 1.951(a) Response to Action Closing Prosecution regarding Control No. 95/002,197 (US 7,478,467), p. 3, Doc. No. 88-13 (Ex. L).

-II-
**RELATIONSHIP OF THE PATENTS IN SUIT**

The patents in the suit are:

(i)   U.S. Patent No. 7,478,467 ("'467 patent" at Doc. No. 88-2; Ex. A)1;

(ii)  U.S. Patent No. 7,708,034 ("'034 patent" at Doc. No. 88-15; Ex. N);

(iii) U.S. Patent No. 8,151,430 ("'430 patent" at Doc. No. 88- 22; Ex. U); and

(iv) U.S. Patent No. 8,505,185 ("'185 patent" at Doc. No. 88-23; Ex. V)

("patents-in-suit").

The first application filed issued was the '467 patent.  The examiner found that there were several distinct inventions and applicant was compelled to file additional applications with the same specification, but with different claims.  Their other applications resulted in the other issued patents-in-suit.


## -III-
## TERMS

## TERM 1 - SNAP LOCK MECHANISM

|  | snap lock mechanism |
|---|---|
| **Ductmate's Construction** | a snap lock mechanism, which in the context of the claim is a circular duct snap lock mechanism that can be closed, opened and closed |
| **Famous' Construction** | a duct snap locking mechanism formed into the sheet metal by a forming machine and having a male portion and a female portion created by the forming machine rolls. |
| Claims 1, 3 and 4 of the '467 patent Claim 5 of the '430 patent | |

The Claim

> 1. A method for manufacturing a circular sheet metal duct comprising:
> a. providing sheet metal;
> b. providing a snap lock mechanism on the sheet metal;
> c. inserting a reusable liquid applied gasketing sealant into the snap lock mechanism; and
> d. forming the sheet metal into the shape of a circular duct.

The preamble of the claim sets forth that it is "A method for manufacturing a **circular sheet metal duct**." (emphasis added) (Doc. No. 88-2; Ex. A) ('467 patent).   Element "d." in claim 1 is "forming the sheet metal in the shape of the circular duct."   There is an explicit limitation in the preamble and in the claim that the duct be a "circular duct."

Defendants' state as a principal of law that, "**<u>it is a principle of claim construction that</u>** **<u>preamble terms are not claim limitations</u>**." Defendants' Br. (Doc 98 p. 12) (emphasis added). This is not correct. The reason is covered in the <u>Initial Comments</u> at page 1.

The term "snap lock mechanism" has an ordinary meaning in the art.  A **<u>circular</u>** duct "snap lock" mechanism and a **<u>rectangular</u>** duct "snap lock" mechanism have different ordinary meanings in the art.  The Sheet Metal and Air Conditioning Contractors National Association Inc. ("SMACNA") sets forth the standards for HVAC duct construction in its manual "HVAC DUCT CONSTRUCTION STANDARDS" and that manual supports the statements set forth above. (See Exhibit GG[1], SMACNA catalog pg. 1.66 § 1.17L-2 and pg. 1.67 Fig. 1-5, L-2; SMACNA catalog pg. 3.8, Fig 3-1 RL 6-8) (This cite was in Doc 88-13, Exhibit L).

(space intentional left blank – text continues on page 6)

---

[1] Note that Ductmate has continued the exhibit numbers from the Defendants brief, which left off with Exhibit FF

**TERM 2, 32, AND 36 - REUSABLE LIQUID APPLIED GASKETING SEALANT**

| Terms # 2, 32 and 36 | reusable liquid applied gasketing sealant |
|---|---|
| Ductmate's Construction | a sealant applied as a liquid and then solidifies to have sufficient compressibility so that it can form an airtight seal. The word "reusable" means the sealant must allow the locking mechanism to be able to be opened and closed repeatedly. A person must be able to close the locking mechanism that forms a sealed duct and then undo the locking mechanism and then again close locking mechanism to create a sealed duct |
| Famous' Construction | Any sealant that is applied as a liquid and then solidifies to have sufficient compressibility so that it can form an air tight seal. After the sealant solidifies, it hardens to the point where it can compress to make a seal without being penetrated by or adhering to the opposite male or female mating surface. It is sufficiently hard so when the self locking mechanism is engaged the sealant will not flow or displace itself out of the applied area, as would happen if a liquid sealant were used. The sealant is formulated with block co-polymers. Examples are butyl and E.P.D.M. rubbers. The sealant could also be polyurethane foamed in place sealant. Any sealant used is applied as a liquid and forms a gasket. This type of sealant does not string like the mastic sealants do. The reusable liquid applied gasketing sealant cannot be a mastic sealant or a cold sealant system or a liquid sealant. Because the sealants do not string when pulled apart, this process prevents waste during the application process. The reusable liquid applied gasketing sealant must not string when pulled apart.<br><br>A person must be able to close the snap locking mechanism that forms a sealed duct and then undo the locking mechanism and then again close the locking mechanism to create a sealed duct. It can be any sealant that has sufficient cohesive strength to be able to be used repeatedly and have sufficient compressibility so that it can form an air tight seal by compression of the gasket. The sealant must allow the lock to be able to be opened and closed repeatedly without destroying the seal. The reusable sealant must permit the seam to be opened and closed multiple times with the seal being functional and effective to seal the seam after each closing. The sealant is applied as a liquid and then solidifies. After the sealant solidifies, it hardens to the point where it compresses to make a seal. When engaged there is no flow around or displacement outside of the applied area when the male portion is inserted such as when a liquid applied sealant is used. The lock can be joined and detached as many times as necessary and the sealant will remain in place as it was originally applied. When the lock is detached, no portion of the sealant will go with the male or opposite member. The reusable liquid applied gasketing sealant must allow the duct to be installed without the installer applying sealant to the duct |
| Claim 1 of the '467 patent<br>Claim 5 of the '430 patent<br>Claim 1 of the '185 patent | |

The Defendants argue that Ductmate's construction improperly deviates from its own explicit definition.  There is no definition for a "a reusable liquid applied gasketing sealant." Therefore, Ductmate is not departing from a definition[2] that does not exist.

Defendants consistent with their *Modus Operandi* of taking words and the law out of context continue to do so with respect to the use of the word "definitions."  In this section and for the rest of the sections in Defendants' Brief, the word "definition" is taken out of context.

The Defendants' state in their brief as follows:

> As discussed above, the specification contains a **"definitions" section that explicitly defines thirty-seven (37) terms**. Supra at 2. See, e.g., Doc. No. 88-2 at Col. 3, ls. 25 – Col. 5, ls.
> 22. Setting off a term by quotation marks is a clear indication from the patentee that what follows is a definition.  Sinorgchem, 511 F.3d at 1136.  The format of this section is clearly set- up to mirror that of a dictionary: a term in quotations followed by a definition. This is true in the ordinary case.  In a situation such as this, where thirty-seven (37) terms are grouped together, each set off by quotation marks, **and all of them under a title identifying them as "definitions,"** there can be no doubt that the patentee acted as his own lexicographer and intended to be bound by those definitions.  Any argument that what is contained in this section are not, in fact, definitions of these terms, is a disingenuous attempt to deviate from these clear definitions.
> Such deviation would be unfair to Famous and the public, who are entitled to rely upon the definitions that Ductmate originally established before the PTO. Any other interpretation of this section would be contrary to the law, and to common sense. (Emphasis added) Defendants' Br. (Doc. 98 p. 16).

The specification must be looked at as a whole. *Markman v. Westview Instruments, Inc*., 517 U.S. 370, 389, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996) ("a term can be defined only in a way that comports with the instrument as a whole").  A Court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys*., 381 F.3d 1111, 1116-1117, (Fed. Cir. 2004).

---

[2] The use of the term definitions, examples, illustrations or the like should not be construed as a limitation or any way to limit construction of terms.

The title, which the Defendants repeatedly refer to as just "definitions", is actually the following:

> **DETAILED DESCRIPTION**
>
> Examples and Explanatory Definitions

('034 patent Col. 3 ls. 21-25)

Defendants abbreviated the title as "definitions."  The complete heading states "Examples and Explanatory Definitions" and not just "definitions."   The word "Definitions" is modified by the words "Examples" and "Explanatory."  The Merriam-Webster online dictionary defines "Example" as "an instance…serving to **illustrate** a rule or precept or to act as an exercise in the application of a rule" and indicates that the word "**illustration**" is a synonym of the word "Example." (See Exhibit HH)  The Merriam-Webster online dictionary defines "Explanatory" as "something to explain" and indicates that "**illustrative**" is a synonym of the word "Explanatory." (See Exhibit II)  The Court must read the document as a whole including the end of the document.

The end of the Detailed Description section contains the following language that appears prior to the claims:

> Various **changes could be made in the above construction** and **method** without departing from the scope of the invention as defined in the claims below.  **It is intended that all matter contained in the above description**, as shown in the accompanying drawings, **shall be interpreted as *ILLUSTRATIVE* and *NOT AS A LIMITATION*.**

('034 patent Col. 7 ls. 17-22) (emphasis added).

When taken as a whole, a person of ordinary skill in the art reading the patents would understand that the words in quotation marks are illustrative and not limitations.   The use of the

above language prevents an example from becoming a limitation and is supported by the Federal

Circuit.

It is not sufficient to redefine the term to something other than its ordinary meaning.

*Ancora Tech., Inc. v. Apple, Inc., 2014 U.S. App. Lexis* 3895 *7-*8 (Fed. Cir. 2014). (the patent

that the examples were "non-limiting examples").

In *Apple Comp., Inc. v. Articulate Sys., Inc*., 234 F.3d 14, the court stated:

> We acknowledge Apple's assertion that a patentee is free to be his own
> lexicorgrapher, and may define claim terms in ways that differ from the common
> understanding of those skilled in the art.  In order to do so, however, a patentee
> must deliberately and clearly point out how these terms differ from the
> conventional understanding.  Apple did not do so here.  Instead, Apple described
> the term "window" in a manner that was consistent with its definition in the
> pertinent art.  Moreover, rather than specifying a narrower meaning for this term,
> Apple taught that the terms of its claims were to be construed broadly. See Col.
> 16, lines 25-26.

*Id*. at 21 ft.nt.5 (internal citations omitted) ( The language in the patent the Court relied upon was

"While the present invention has been described with reference to FIGS 1 through 35, it will be

appreciated that the figures are <u>for illustration only</u>, and do not limit the spirit and scope of the

invention" (emphasis added)).

The illustrative terms in the patents in suit are consistent with the meaning in the art and

are not limitations as taught by the patent as a whole.

The Defendants want to selectively take sentences from the prosecution and

reexamination out of the context of the entire argument that they are contained in and then insert

the sentences into their construction.  Allowing the Defendants to selectively take sentences out

of context would be improper and would create an improper mosaic. No claim would be able to

have a construction if it were the law that exact sentences in the file history randomly have to be

imported into the claim construction.   The construction given by Ductmate is consistent with the

arguments made by Ductmate and accounts for the arguments made by Ductmate.  For instance, "a sealant applied as a liquid and then solidifies" takes into account that the sealant solidifies and therefore is not a liquid and would not displace itself out.   Another example is where the construction states, "A person  must be able to close the locking mechanism that forms a sealed duct and then undo  the locking mechanism and then again close locking mechanism to create a sealed  duct." Defendants argue that the term should include "without destroying the seal." Without destroying the seal is necessarily included in Ductmate's construction because a person must be able to close the locking mechanism that forms a sealed duct and then undo the locking mechanism and then again close the locking mechanism to create a sealed duct.  If the seal was destroyed, a person would not be able to then again close the locking mechanism to create a sealed duct because the sealed duct would have been destroyed.  When reviewing the file history as a whole as required by the law, Ductmate believes its construction is consistent with it.

## TERMS 3 AND 33 - INTO THE SNAP LOCK MECHANISM

| Terms # 3 and 33 | into the snap lock mechanism |
|---|---|
| **Ductmate's Construction** | into the snap lock mechanism |
| **Famous' Construction** | Indefinite |
| Claim 1 of the '467 patent<br>Claim 5 of the '430 patent | |

"Snap lock Mechanism" has a construction which should be its plain and ordinary meaning.  The Defendants' understand the term "snap lock mechanism" to have a meaning and even understand as a part of its understood meaning that it has male and female portions.  The Defendants are arguing that a person of skill in the art would not understand the addition of the words "into the" to the words snap lock mechanism.   The snap lock mechanism is shown illustratively with sealant inserted into the snap lock mechanism in Figure 2.  The word "into" has a plain meaning.  This should not be difficult for a person of ordinary skill in the art to understand.  Apparently, the Defendants are trying to define a person of ordinary skill to have such a low skill level that they could not understand "into the" snap locking mechanism."

The Defendants state "it is not clear how it would be inserted into the male portion."  The term does not call for that.  The snap lock mechanism has a male portion and a female portion.  "Into the snap lock mechanism," to a person of skill in this art requires it be in the snap lock mechanism.  Therefore, it would either be on the male or into the female.  An illustrative example is shown in Figure 2.  It is the Defendants' burden to prove indefiniteness, by showing the term to be insoluble ambiguous by clear and convincing evidence.  *See Halliburton Energy Servs. Inc. v. M-I, LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008); *Honeywell Int'l Inc. v. International Trade Comm'n,* 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). (claims that are "not

amenable to construction" or are insolubly ambiguous" are indefinite). Defendants have not met their burden.

## TERM 4  - FORMING MACHINE

| Term # 4 | forming machine |
|---|---|
| Ductmate's Construction | Machinery capable of forming sheet metal into a desired shape or profile, which in the context of the claim is a circular duct profile |
| Famous' Construction | Machinery capable of forming sheet metal into a desired shape or profile. Examples of this type of machine are machines made by Nor, Maplewood or Lockformer. |
| Claim 3 and 9 of the '467 patent | |

As explained, the illustrative description is not meant to be a limitation.   It is clear from the context of the claim that circular duct is being made.   A rectangular duct forming machine could not form a circular duct.  Therefore, Ductmate's construction is appropriate.

Ductmate agrees that forming machines are not limited to circular duct.  However, as the term should be construed in the context of the entire claim, the forming machine has to be one for forming a circular duct.

## TERM 5 - FORMING THE SHEET METAL TO CREATE A FOLD HAVING A GAP

| Term # 5 | forming the sheet metal to create a fold having a gap |
|---|---|
| Ductmate's Construction | an edge of the sheet metal is formed to create a space |
| Famous' Construction | Indefinite |
| Claim 6 of the '467 patent | |

The construction of this term should be plain to anybody and especially to those skilled in the art.   Again, the Defendants must be defining a person of ordinary skill in the art to have such a low level of skill that they do not understand the terms "fold" and "gap." The terms "fold" and "gap" have a plain meaning that anybody can understand.   "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to

lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). (Citing See Brown v. 3M,265 F.3d 1349, 1352 (Fed Cir. 2001)) (holding that the claims did "not require elaborate interpretation").

Any person would be able to determine those terms without evening looking at the specification.  It is the Defendants' burden by clear and convincing evidence to show that there is no possible understanding of those terms. *See Halliburton Energy Servs. Inc. v. M-I, LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008); *Honeywell Int'l Inc. v. International Trade Comm'n,* 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). (claims that are "not amenable to construction" or are insolubly ambiguous" are indefinite).  If necessary, one can simply look at the figures to determine a fold and a gap for illustrative examples.  The fact that there is an interpretation makes the terms definite.

## TERM 6 - GAP

| Term # 6 | gap |
|---|---|
| Ductmate's Construction | a space in the fold of the sheet metal on the female portion of the circular duct snap locking mechanism |
| Famous' Construction | Indefinite |
| Claims 6, 7, 8 and 11 of the '467 patent | |

The term gap has a plain ordinary meaning.  See above.

## TERM 7  - CREATE A FOLD HAVING A GAP

| Term # 7 | create a fold having a gap |
|---|---|
| Ductmate's Construction | making a fold having a space |
| Famous' Construction | Indefinite |
| Claim 6 of the '467 patent | |

Again, this has a plain meaning.   See above.

## TERM 8 - ANGLE OF THE GAP

| Term # 8 | angle of the gap |
|---|---|
| Ductmate's Construction | measurement of the angle between the sides of the fold in the sheet metal |
| Famous' Construction | Indefinite |
| Claims 7 and 8 of the '467 patent | |

The term has a plain ordinary meaning that anybody could understand.  See above.

## TERM 9 - DESIRED ANGLE

| Term # 9 | desired angle |
|---|---|
| Ductmate's Construction | the angle of the desired profile |
| Famous' Construction | Indefinite. |
| Claim 7 of the '467 patent | |

The term has a plain ordinary meaning that anybody could understand.  See above.

## TERM 10 - FORMING IS DONE BY MULTIPLE ROLL STANDS, EACH ROLL STAND FORMS THE SHEET METAL FURTHER LESSENING THE ANGLE OF THE GAP UNTIL THE DESIRED ANGLE

| Term # 10 | forming is done by multiple roll stands, each roll stand forms the sheet metal further lessening the angle of the gap until the desired angle |
|---|---|
| Ductmate's Construction | forming is done by more than one roll stand wherein each stand forms and lessens the angle to form a desired profile |
| Famous' Construction | Indefinite. |
| Claim 7 of the '467 patent | |

The term has a plain ordinary meaning that can be understood by any person.  See above.

(space intentionally left blank – text continues on page 15)

## TERM 11 - NOZZLE

| Term # 11 | nozzle |
|---|---|
| **Ductmate's Construction** | nozzle |
| **Famous' Construction** | a device used to insert sealant that has a cylindrical body where the base has larger diameter than the cylindrical body, the upper portion of the cylindrical body has a cut out portion which creates a c-shaped channel, the c-shaped channel has matching notched out sides, there is a passage way vertically through the cylindrical body and through a vertical portion of the c-shaped channel, and the passage extends horizontally through a top horizontal section of the c-shaped channel. |
| Claim 10 of the '467 patent | |

The term has a plain ordinary meaning that can be understood by any person in the field. Defendants are taking the statement in the specification out of context.  "This configuration of the nozzle 20 allows it to be placed in between the roll stands and be able to inject sealant into the fold of the ductwork."  This sentence does not say that it is the only configuration of the nozzle.

The Defendants again take another statement out of context and state: "Ductmate argued that the special nozzle described in the specification is required and is not just a preferred environment: "Ductmate also developed a nozzle to help with the insertion, amounts of sealant, prevention of getting on roll formers, the larger opening, and opening and closing of the finished round circular snap locking duct."  See July 12, 2013 Declaration of Edward F. Rafalski, Exhibit B of Submission Under 37 C.F.R. 1.951(a) Response to Action Closing Prosecution regarding Control No. 95/002,197 (US 7,478,467), p. 15, Doc. No. 88-5 (Ex. D)."

The next sentences in the document say "there are other solutions to those issues and while claim 1 is not restricted to those particular solutions, none of the prior art suggests or

discloses solutions." See July 12, 2013 Declaration of Edward F. Rafalski, Exhibit B of

Submission Under 37 C.F.R. 1.951(a) Response to Action Closing Prosecution regarding Control

No. 95/002,197 (US 7,478,467), p. 15, Doc. No. 88-5 (Ex. D)."

Claim differentiation as discussed in Ductmate's opening brief should be used in this

circumstance and nozzle should have its normal meaning and plain ordinary meaning.

## TERMS 12 AND 26 - SELF LOCKING MECHANISM

| Terms # 12 and 26 | self locking mechanism |
|---|---|
| Ductmate's Construction | something that allows two edges of sheet metal to be joined together without a separate fastener to form a duct, which in the context of the claim is circular duct wherein the male and female portion can engage and disengaged |
| Famous' Construction | Something that allows two edges of sheet metal to be joined together without a separate fastener to form a duct. The seam created by the edges is referred to as the longitudinal seam. Examples of this are a button lock and a reeves lock. (see SMACNA Rules 6a, 6b, 7 and 8). |
| Claims 1-4, 11 and 15 of the '034 patent Claim 1 of the '430 patent | |

See above for the arguments with respect to the examples and explanatory definitions in

term 2 and for the circular duct vs. rectangular duct discussion with respect to SMACNA in term

1.

(space intentional left blank – text continues on pg. 17)

## TERMS 13 AND 28 - IN THE FEMALE PORTION OR ON THE MALE PORTION

| Terms # 13 and 28 | in the female portion or on the male portion |
|---|---|
| Ductmate's Construction | in the female portion or on the male portion of the self locking mechanism |
| Famous' Construction | Indefinite<br><br>-or-<br><br>sealant can be added to the male or female portion, where "sealant" is construed as "a liquid applied gasketing sealant" (see construction of term # 14 below) |
| Claim 1 of the '034 patent<br>Claim 1 of the '430 patent | |

This has a plain meaning. *Phillips v. AWH Corp.*, 415 F.3d at 1314. See above with respect to terms 3 and 33 regarding Defendants' arguments "into the snap lock mechanism." See Figures of the '034 and '430 patents and the disclosures in the patent as a whole for illustrative examples. It is the Defendants' burden to prove indefiniteness, by showing that the term cannot be given any reasonable meaning by clear and convincing evidence. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005). Defendants have not met their burden.

## TERMS 14 AND 27 - LIQUID APPLIED GASKETING SEALANT

| Terms # 14 and 27 | a liquid applied gasketing sealant |
|---|---|
| Ductmate's Construction | any sealant that is applied as a liquid and then solidifies to have sufficient compressibility so that it can form an air tight seal, and does not string like mastics do and is sufficiently hard so that when the self locking mechanism is engaged the sealant will not flow or displace itself out of the applied area |
| Famous' Construction | Same as Terms # 2, 32 and 36 |
| Claim 1 of the '034 patent<br>Claim 1 of the '430 patent | |

This is a different term having a different meaning than "reusable liquid applied gasketing sealant." This should be clear to a person of ordinary skill in the art. The two other related patents are for distinct claimed inventions as determined by the U.S. Patent Office.

The Defendants cite as support for their construction a statement from a notice for allowance in a divisional patent, which is a distinct invention having different claims.  However, statements in the notice of allowance by the examiner are insufficient to limit claim scope. See *Ancora Tech. V. Apple, Inc*. 2014 U.S. App. Lexis 3895, *12 (Fed. Cir. 2014).  This is true in this instance because the statements cited by Defendants were not made in the notice of allowance for the patent that contained the claim term, but in a different patent and for a different term.  The issue regarding the illustrative description has been fully addressed above in term 2 and will not be repeated.

Ductmate never indicated that the claims terms are identical, contrary to Defendants' assertion.  The claims in the '430 patent contain both terms "reusable liquid applied gasketing sealant" as well as "liquid applied gasketing sealant."

With respect to the prosecution, Defendants do not reveal that claim 2 describes the reusable seal in the '034 patent and those cited statements can be directed to that claim.

## TERM 15 - WHEREIN THE SEALANT HAS PHYSICAL PROPERTIES SUCH THAT IT PROVIDES A REUSABLE SEAL

| Term # 15 | wherein the sealant has physical properties such that it provides a reusable seal |
|---|---|
| Ductmate's Construction | The sealant must have properties to enable the sealant to be reusable in that a person must be able to close the snap locking mechanism that forms a sealed duct and then undo the locking mechanism and then again close the locking mechanism to create a sealed duct. |
| Famous' Construction | Same as Terms # 14 and 27. |
| Claim 2 of the '034 patent | |

This is a different term than terms 14 and 17 and thus has a different meaning.   This a dependent claim term that makes the liquid applied gasketing sealant provide a reusable seal.  While reviewing the claims, a person of ordinary skill in the art can understand the terms and the

construction as being different.  The illustrative example issue is addressed above in term 2 and will not be repeated.

## TERM 16 - THE SEALANT HAS PHYSICAL PROPERTIES SUCH THAT IT PROVIDES A REUSABLE SEAL SO THAT THE  SELF LOCKING MECHANISM CAN BE ENGAGED, DISENGAGED, AND REENGAGED

| Term # 16 | the sealant has physical properties such that it provides a reusable seal so that the self locking mechanism can be engaged, disengaged, and reengaged |
|---|---|
| Ductmate's Construction | the sealant has properties to allow the self locking mechanism to connect, open, and then connect again after having been connected and opened the sealant retains its ability to reduce or eliminate leakage |
| Famous' Construction | Same as Term # 15 |
| Claim 2 of the '034 patent | |

This term is different from term 15.   The term has additional language that indicates that the self locking mechanism can be engaged, disengaged and reengaged thus making it a different term.  It should not have the same construction.  The additional language on a term alters the meaning of a term.   The term as written does not have an explicit illustrative example.  Ductmate's construction is consistent with the ordinary meaning and the illustrative examples in the specification.

## TERMS 17 AND 40 - METAL DUCT IS CAPABLE OF A PIPE PRESSURE OF AT LEAST ¼" WATER COLUMN TO 10" WATER COLUMN WITHOUT THE SEAL FAILING

| Terms # 17 and 40 | metal duct is capable of a pipe pressure of at least ¼" water column to 10" water column without the seal failing |
|---|---|
| Ductmate's Construction | metal duct is capable of a pipe pressure of at least ¼" water column to 10" water column with minimal leakage from the seal |
| Famous' Construction | Indefinite |
| Claim 5 of the '034 patent Claim 5 of the '185 patent | |

Ductmate gives an illustrative example of "without the seal failing." '034 Patent Col. 4, ls 44-47.   That example includes the words minimal leakage.  The Defendants question how the seal cannot fail if it has minimal leakage.   Sealing includes reduction of air loss.   If there is a reduction of air loss, the seal may not fail even at higher pressures.  Therefore, a seal could prevent some air loss.  The Defendants, in their own advertising and testing of their product, understand one way for the seal not to fail while still leaking.   See Exhibit JJ (This Exhibit is part of the intrinsic record as it was used in Ductmate's brief which is Exhibit 8 (Doc 88-19 Ex L).

## TERMS 18 AND 41 - WITHOUT THE SEAL FAILING

| Terms # 18 and 41 | without the seal failing |
|---|---|
| Ductmate's Construction | minimal leakage occurring when subjected to pressures not greater than 10 inches of water column or 0.36 psi |
| Famous' Construction | Indefinite |
| Claim 5 of the '034 patent<br>Claim 5 of the '185 patent | |

Defendants say that the intrinsic record is silent on the issue of minimal leakage.  Contrary to Defendants' statement, the patents give:  (i) an illustrative example; and (ii) illustrative test data. ('034 patent Col. 4. ls 45-47; Figs. 13 & 15))   A person of skill in the art would determine if a reduction in air leakage from a joint took place.   The Defendants' advertisement, which is part of the intrinsic record, shows one way of doing this.  (See Exhibit JJ).

(space intentional left blank – text continues on pg. 21)

## TERMS 19 AND 42 - VOLATILE ORGANIC COMPOUND

| Terms # 19 and 42 | volatile organic compound |
|---|---|
| Ductmate's Construction | Organic chemical compounds that have high enough vapor pressures under normal conditions to significantly vaporize and enter the atmosphere. A wide range of carbon-based molecules, such as aldehydes, ketones, and hydrocarbons are VOC's |
| Famous' Construction | Organic chemical compounds that have high enough vapor pressures under normal conditions to vaporize and enter the atmosphere. A wide range of carbon-based molecules, such as aldehydes, ketones, and hydrocarbons are VOCs. |
| Claim 6 of the '034 patent Claim 6 of the '185 patent | |

Famous wants to have its claim interpretation exclude the word significantly.  There is no reason to do this when Ductmate's construction is consistent with plain meaning and the patent disclosure.  Additionally, in order to rebut the definitions provided by Defendants, attached is a definition that shows use of the word "significantly vaporize" and can demonstrate that one skilled in the art could understand the term.  See Exhibit KK.  Defendants are correct that page 75 of Plaintiff's brief contained an inadvertent error.

## TERMS 20 AND 43 - DOES NOT BLOW OUT UNDER PRESSURE

| Terms # 20 and 43 | does not blow out under pressure |
|---|---|
| Ductmate's Construction | sealant does not come out when under pressure |
| Famous' Construction | Indefinite |
| Claim 10 of the '034 patent Claim 10 of the '815 patent | |

This term has a plain meaning that a person of skill in the art would understand, "blow out," and the intrinsic record does not have to be reviewed.  *Phillips v. AWH Corp.*, 415 F.3d at 1314.  The term is not insoluble ambiguous and therefore not indefinite.  *See Halliburton Energy Servs. Inc. v. M-I, LLC*, 514 F.3d 1244, 1250 (Fed. Cir. 2008); Honeywell Int'l Inc. v.

International Trade Comm'n, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). (claims that are "not amenable to construction" or are insolubly ambiguous" are indefinite.

## TERMS 21 AND 44 - THE SELF LOCKING MECHANISM CAN BE ENGAGED AND REENGAGED

| Terms # 21 and 44 | the self locking mechanism can be engaged and reengaged |
|---|---|
| Ductmate's Construction | the self locking mechanism can connect, open, and then connect again after having been connected and opened as many times as necessary and the sealant is able to eliminate or reduce leakage |
| Famous' Construction | Same as Term # 15 |
| Claim 11 of the '034 patent Claim 11 of the '185 patent | |

This term has a clear plain meaning. *Phillips v. AWH Corp.*, 415 F.3d at 1314. The term is a different term than claim term 15 (wherein the sealant has physical properties such that it provides a reusable seal). The illustrative example given in the specification of "allows the female portion to disengage and reengage" supports Ductmate's construction. '034 patent, Col. 4 ls 26-30. Reduction of air leakage is not complicated and can be understood by a person of ordinary skill in the art in their advertisement that shows reduction of air loss at different pressures. See Exhibit JJ.

## TERMS 22 AND 45 - GIVES YOU A TIGHTER FIT

| Terms # 22 and 45 | gives you a tighter fit |
|---|---|
| Ductmate's Construction | a tighter fit for the locking mechanism |
| Famous' Construction | Indefinite |
| Claim 12 of the '034 patent Claim 12 of the '185 patent | |

Tighter is not relative. Tighter in this context means tighter than not having sealant with the locking mechanism and can be readily understood by a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d at 1314.

## TERMS 23 AND 46 - VIBRATIONS ARE REDUCED

| Terms # 23 and 46 | vibrations are reduced |
|---|---|
| **Ductmate's Construction** | reduced vibration of the duct |
| **Famous' Construction** | Indefinite |
| Claim 12 of the '034 patent<br>Claim 12 of the '185 patent | |

This term has a plain meaning.  *Phillips v. AWH Corp.*, 415 F.3d at 1314.  As far as what vibrations are being reduced, one looks to the entire claim.   The vibrations of the circular duct are being reduced.   The Defendants argue vibrations in the duct can occur in two locations and that makes the term indefinite.  That argument makes no sense.  The duct is a single unitary sheet metal piece and if the ends vibrate, it will cause the entire duct to vibrate.  Is the locking mechanism not part of the duct?   If the locking mechanism vibrates, so does the duct because it is part of the duct.  But even if the duct was not a unitary piece, the Defendants recognize that reduction of vibrations can occur, and therefore, the term is not ambiguous. The Defendants try to confuse the issue because the term being construed is only "vibrations are reduced."  Anyone can understand the term means reduced vibrations.

## TERMS 24 - REUSED IN THE MANUFACTURING PROCESS

| Term # 24 | reused in the manufacturing process |
|---|---|
| **Ductmate's Construction** | that pieces of the sealant can be used again in manufacturing such as reliquefying the solidified sealant so that it can then be placed in the locking mechanism |
| **Famous' Construction** | Indefinite. |
| Claim 13 of the '034 patent | |

This term has a plain meaning.

## TERM 25 AND 34 - SEALED CIRCULAR DUCT

The parties agree.

## TERMS 29 AND 39 - REEVES LOCK

| Terms # 29 and 39 | reeves lock |
|---|---|
| Ductmate's Construction | The circular duct locking mechanism as shown in Figure 1 without the button or notch for the female end. |
| Famous' Construction | The locking mechanism as shown in FIG. 1 without the button or a notch protruding from the female end. Examples of this can be  seen in SMACNA RL 6A, 6B and 7. |
| Claims 3 and 7 of the '430 patent Claim 4 of the '185 patent | |

Reeves lock is a common term that a person of ordinary skill would understand.   Reeves lock is known to be used for circular duct.

## TERM 30 - AIRSTREAM

| Term # 30 | air stream |
|---|---|
| Ductmate's Construction | Air traveling within the duct |
| Famous' Construction | Air on the interior or exterior of the duct. |
| Claims 4 and 8 of the '430 patent | |

There is directed air within the duct and not outside of it.  The term has a plain ordinary meaning and should be given its ordinary meaning.

## TERM 35 - SELF LOCKING LONGITUDINAL SEAM

| Term # 35 | self locking longitudinal seam |
|---|---|
| Ductmate's Construction | A seam that allows two edges of sheet metal to be joined together without a separate fastener to form a circular duct wherein the male and female portion can engage and disengage ['185 Patent Col. 4 ls 7-12; '467 Patent Col. 1 ls 28-31] |
| Famous' Construction | Longitudinal seam having a self locking mechanism.  A self locking mechanism, which is something that allows two edges of sheet metal to be joined together without a separate fastener to  form a duct.  The seam created by the edges is referred to as the longitudinal seam.  Examples of this are a button lock and a reeves lock. (see SMACNA Rules 6a, 6b, 7 and 8). |
| Claim 1 of the '185 patent | |

As explained repeatedly, circular is in the claim. There are types of circular locks that differ from rectangular and it has been argued by Ductmate that the claim applies to a circular locking mechanism in the prosecution.

## TERM 37 - POSITIONED WITHIN THE LONGITUDINAL SEAM

| Term # 37 | positioned within the longitudinal seam |
|---|---|
| **Ductmate's Construction** | positioned within the longitudinal seam |
| **Famous' Construction** | Indefinite. |
| Claim 1 of the '185 patent | |

This term adds "positioned within" to longitudinal seam.  This term has a plain ordinary meaning and is in no way shape or form insoluble undefinable.   "Positioned within" is understood by anyone.  An illustrative example can be seen in Figure 1.

## TERM 38 - WHEREIN THE SEALANT HAS THE PHYSICAL PROPERTIES SUCH THAT IT PROVIDES A REUSABLE SEAL SO THAT THE SELF LOCKING MECHANISM CAN BE ENGAGED, DISENGAGED AND REENGAGED.

| Term # 38 | wherein the sealant has the physical properties such that it provides a reusable seal so that the self locking mechanism can be engaged, disengaged and reengaged |
|---|---|
| **Ductmate's Construction** | The sealant must have properties to be reusable in that a person must be able to close the snap locking mechanism that forms the sealed duct and then undo the locking mechanism and then again close the locking mechanism to create a sealed duct as many times as necessary and the sealant is able to eliminate or reduce leakage. |
| **Famous' Construction** | Same as Term # 16. |
| Claim 2 of the '185 patent | |

The only difference in this term and term 16 is the word wherein. See above Term 16.

**TERM 47 - SEALANT GIVES A TIGHTER FIT WITH THE SELF LOCKING**

**LONGITUDINAL SEAM SO THAT VIBRATIONS ARE REDUCED**

| Term # 47 | sealant gives a tighter fit with the self locking longitudinal seam so that vibrations are reduced |
|---|---|
| Ductmate's Construction | The sealant provides a tighter fit for the locking mechanism and reduces vibration of the duct |
| Famous' Construction | Indefinite |
| Claim 12 of the '185 patent | |

This again has a plain meaning and is easily understood.  It is not indefinite.

**TERM 48 - MULTIPLE SHEET METAL DUCTS**

| Term # 48 | the multiple sheet metal ducts |
|---|---|
| Ductmate's Construction | the multiple sheet metal ducts |
| Famous' Construction | Indefinite. |
| Claim 13 of the '185 patent | |

It has a clear meaning.  The Patent Office understood it.  Claim 1 refers to installing the ductwork with other ductwork.  Those multiple pieces of ductwork, as the claim indicates, are stacked in a bundle.

## -IV-
## OBJECTIONS TO DEFENDANTS' OFFER OF EXTRINSIC EVIDENCE

It appears that the parties agree that extrinsic evidence in the form of live testimony is not necessary.   Ductmate would anticipate that both parties would be available to answer questions on the technology at issue in the case, including the technology described in the asserted patents as well as that utilized in the Famous products.

Ductmate objects to all of the extrinsic evidence discussed in Defendants identification of extrinsic evidence, both the relied upon evidence in the brief and the evidence that is not relied upon in its brief.  There is no explanation as to why the extrinsic

evidence is necessary or a showing that intrinsic record is insufficient.  Famous' product,

Ductmate's product and other demonstrative exhibits including prior art products or

documents were not referenced in Defendants' brief.   Defendants should not be permitted

to raise new arguments or take new positions in a hearing or subsequent briefs without

Ductmate having the opportunity to do the same.  To the extent that Defendants are

permitted to do so, Ductmate reserves the right to object and use its own to rebut the usage

of those items.


                                            Respectfully submitted,

Dated:  March 28, 2014                        s/John C. Thomas III_____
                                            John C. Thomas III
                                            PA I.D. No. 85532
                                            jthomas@beckthomas.com
                                            Paul A. Beck
                                            PA I.D. No. 01147
                                            pbeck@beckthomas.com
                                            George Raynovich, Jr.
                                            PA I.D. No. 00929
                                            info@beckthomas.com
                                            Richard T. Ting
                                            PA I.D. No. 200438
                                            rting@beckthomas.com
                                            Beck & Thomas, P.C.
                                            1575 McFarland Road, Suite 100
                                            Pittsburgh, PA 15216
                                            (412) 343-9700/5787

                                            *Attorneys for Plaintiff*
                                            *Ductmate Industries, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2014, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Pennsylvania, using the electronic case filing system of the court. The electronic case filing system will send notification of such filing to all counsel of record. Counsel may access such document using the Court's system.

_s/Catherine M. Baranet_____
Catherine M. Baranet, Legal Assistant