IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUCTMATE INDUSTRIES, INC.,

    Plaintiff,                                  12cv1440
                                                   **ELECTRONICALLY FILED**
        v.

FAMOUS DISTRIBUTION, INC,
FAMOUS INDUSTRIES, INC.,

    Defendants.

# MEMORANDUM ORDER RE: PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM RE: COUNTERCLAIM FOR DECLARATORY JUDGMENT OF UNENFORCEABILITY (DOC. NO. 128)

## I. Introduction

This case centers on alleged infringement of four United States Patents: No. 7,478,467 ("the '467 Patent"); No. 7,708,034 ("the '034 Patent"); No. 8,151,430 ("the '430 Patent"); and No. 8,505,185 ("the '185 Patent). Doc. No. 51. Claims before this Court have been raised by Plaintiff in its five count Complaint for Patent Infringement (Doc. No. 51) and by Defendants in their First Amended Answer, in which Defendants set forth nine affirmative defenses and nine counterclaims (Doc. No. 124). Defendants' Amended Answer includes an affirmative defense and counterclaim based inequitable conduct in which Defendants contend that Plaintiff, through its current lead trial counsel and the patents' inventors, made false statements and failed to disclose material information during proceedings before the United States Patent and Trademark Office. Doc. No. 124.

Presently before this Court is Plaintiff's Motion to Strike Affirmative Defense of Inequitable Conduct and Motion to Dismiss for Failure to State a Claim re: Counterclaim for

Declaratory Judgment of Unenforceability.  Doc. No. 128.  Plaintiff moves this Court to strike Defendants' affirmative defense of inequitable conduct with prejudice and dismiss Defendants' counterclaim for declaratory judgment of unenforceability due to inequitable conduct.  Id.  Defendants oppose this motion in its entirety.  The matter has been fully briefed and is ripe for disposition.  Doc. Nos.  128, 129, 132, 134, 135.  After review of the Amended Answer and applicable case law, Plaintiff's Motion to Strike Affirmative Defense of Inequitable Conduct (Doc. No. 128) will be DENIED.  However, the affirmative defense of inequitable conduct (ninth affirmative defense) and counterclaim for declaratory judgment of unenforceability due to inequitable conduct (ninth counterclaim) will be bifurcated from Plaintiff's infringement claims.  Discovery and all other proceedings as to inequitable conduct will be stayed until a jury determination on infringement and other patent issues.

**II. Statement of Facts**

The following are the pertinent facts of Defendants' Ninth Affirmative Defense, Inequitable Conduct, and Ninth Counterclaim, Declaratory Judgment of Unenforceability Due to Inequitable Conduct, taken as true from Defendants' Amended Answer solely for the purposes of this Memorandum Order:

Douglas G. Gudenburr ("Gudenburr") and Vincent L. Bloom ("Bloom") are the sole inventors named on the '467 patent, '034 patent, '430 patent, and '185 patent.  Doc. No. 124, ¶¶ 44 and 45.  Each of these patents are directed to the same basic alleged invention, a self-sealing circular sheet metal duct, and are related to "circular sheet metal ducts" and the "liquid applied gasketing sealant" applied in the manufacturing of such ducts.  Id. at ¶ 45.  The '034, '430 and '185 patents claim priority to the '467 patent.  Id. at ¶ 45.  Plaintiff was represented by attorney

John M. Thomas during the prosecution of each of these patents. Id. at ¶ 44. Thomas serves as Plaintiff's lead trial counsel in this present federal case. Id.

*1. Alleged False Assertions Made Related to Prior Art*

During the prosecution of the '467 patent, Thomas, Gudenburr, and Bloom argued that the industry and related art is divided between custom made ductwork (square or rectangular) and mass produced ductwork (circular or round). Id. at ¶ 47. They further argued that because of this division, the Applicant Admitted Prior Art was inapplicable to the invention in the pending application. Id. No such division exists between the custom made and mass produced ductwork. Id. at ¶ 50.

A telephone interview was conducted between Thomas, Gudenburr, and Bloom and a United States Patent and Trademark Office ("USPTO") patent examiner on June 25, 2008, during which prior art was discussed. Id. at ¶ 49. On July 3, 2008, the USPTO patent examiner rejected pending claims 15-25 over the prior art. Id. at ¶ 48. Thomas, in his response, summarized the telephone interview, and amended the single independent claim to specify "circular" duct. Id. at ¶ 49. In October 2008, the patent examiner allowed the claims as amended. Id. Claims were made, through declarations, about the alleged difference between circular and square ducts during reexamination proceedings related to the '467 patent and the '430 patent. Id. at ¶ 51. But for these statements, the patents would not have issued because of the applicable prior art. Id. at ¶ 53.

*2. Alleged Failure to Disclose a Prior Art Manufacturing Process*

The manufacturing process of applying a sealant to a locking mechanism or flange duct is a key distinction between the prior art and the alleged invention. Id. at ¶ 56. Bloom and Gudenburr failed to disclose that sealant is positioned within a locking mechanism while the duct

3

and locking mechanism are formed on a machine. Id.. The patents would have been rejected over the prior art or would not have issued if the prior manufacturing process had been disclosed. Id..

   3. *Alleged Misrepresentations and Failure to Disclose re: the 5511M Sealant*

The prior art mentions use of Ductmate 5511 Sealant. Id. at ¶ 58. Thomas, Gudenburr, and Bloom told the USPTO that the prior art sealant and Ductmate 5511M Sealant could not be used on a roll-forming line and packaged, shipped, and stored in bundles. Id. This statement was false. Id. Thomas, Bloom, and Gudenburr intentionally failed to fully dislose documents related to the 5511M sealant. Id. at ¶ 59. These documents were relevant to the patents and was cited by the USPTO to reject at least one of the claims of the '034 patent during reexamination. Id. at ¶ 60.

   4. *Alleged Misrepresentations Re: Q'So Sealant*

Thomas stated that the "Q'So Product does not perform the same function as the claimed invention" in response to an April 10, 2009 action. Id. at ¶ 62. Gudenburr, Bloom, and Thomas explained the difference between the Q'So Product and the claimed invention to a USPTO examiner during a June 25, 2008 interview. Id. at ¶ 63. These statements were false; there is no difference between the Q'So Product and the products at issue. Id. at ¶¶ 62 and 63. Gudenburr, Bloom, and Thomas intentionally made material representations to the USPTO. Id. at ¶ 64. But for these statements, the '034 patent and other patents at issue would have been rejected over the prior art and would not have issued. Id. at ¶ 64.

   5. *Alleged Failure to Disclose the Nordson FoamMelt 200 Adhesive Applicator*

Bloom intentionally failed to disclose the use of the FoamMelt 200 Adhesive Applicator as prior art during the prosecutions of the patents in issue. Id. at ¶ 66. Plaintiff had a 2003

4

brochure for the applicator in its possession. Id.. If Bloom had disclosed the applicator, the claim of the patents in dispute would have been rejected and/or would not have issued. Id..

  6. *Alleged False Statements re: Commercial Success*

Thomas submitted a declaration of Edward F. Rafalski during the reexamination proceedings of the '467 patent and the '430 patent. Id. at ¶ 70. Rafalski, in his declaration, asserted that the sealed pipe products were successful enough that Plaintiff discontinued production of unsealed pipe products. Id. at ¶ 71. This is "incorrect." Id. Defendants reserve the right to supplement this claim. Id.

**III. Standard of Review**

  A. *Federal Rule of Civil Procedure 12(f)*

Under Fed. R. Civ. P. 12(f), a court may, on its own or on a timely motion made by either party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Nationwide Mutual Fire Ins. Co.*, 788 F.Supp.2d 404, 407 (W.D. Pa. 2011) (citing *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002).

While "a court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," a motion to strike is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Thornton v. UL Enterprise, LLC*, 2010 WL 1004998, *1 (W.D. Pa. Mar. 16, 2010); *see In re Fine Paper Antitrust Litig.*, 751 F.2d 603 (3d Cir. 1985). "Striking some or all of a pleading [] is considered a drastic remedy to be resorted to

5

only when required for the purpose of justice." *Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 443 (W.D. Pa. 2010).

Motions to strike must be decided on the pleadings alone, and the court should consider the liberal pleading standards of Rule 8 and the lack of a developed factual record at this early stage of litigation. *Simmons*, 788 F.Supp. at 407.

*B. Federal Rule of Civil Procedure 12(b)(6) (Generally)*

In considering a Rule 12(b)(6) motion, Federal Courts generally require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a claim:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved*

6

*Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a claim merely because it appears unlikely or improbable that a party can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a claim that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563, n.8.

**IV. Discussion**

***A. Defendants have Advanced Sufficient Factual Averments to Survive this Motion to Dismiss/Motion to Strike***

Plaintiff contends that Defendants' affirmative defense and counterclaim based inequitable conduct do not satisfy the pleading requirements and the allegations should be stricken and/or dismissed with prejudice, in part because inequitable conduct was pled for the purpose of disqualifying Plaintiff's lead trial counsel. Doc. No. 129. Specifically, Plaintiff argues that: (1) Defendants do not set forth that Thomas, Bloom, or Gudenburr knew assertions made were false; (2) Defendants do not establish that any failure to disclose was intentional; (3) facts set forth in the Amended Answer are incorrect; (4) arguments to distinguish prior art cannot be the basis for inequitable conduct; and (5) Defendants' allegations do not establish "material"

7

falsehoods. The Court will not address Plaintiff's third argument because the factual averments set forth in Defendants' Amended Answer must be taken as true at this stage.

Actions constitute inequitable conduct when: (1) an individual associated with the filing and prosecution of a patent application makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information; and (2) does so with a specific intent to deceive the United States Patent and Trademark Office. *Exergen Corp. v. Wal-Mart*, 575 F.3d 1312, 1326 (Fed.Cir. 2009) *citing Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed.Cir. 2008); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 1181 (Fed.Cir. 1995); 37 C.F.R. § 1.56 (2008). As conceded by both Parties, inequitable conduct must be pled with particularity under Federal Rule of Civil Procedure 9(b) and applicable case law. *Exergen Corp.*, 575 F.3d at 1326 *citing Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed.Cir. 2003). Thus, this Court's inquiry centers on whether Defendants' claim for inequitable conduct is pled with particularity. It is.

As set forth by Judges of the United States Court of Appeals for the Federal Circuit, the circumstances of particularity under Rule 9(b) are met if the pleader identifies the "specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegation of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with the specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1328-29.

Defendants have pled sufficient factual averments (when accepted as true and viewed in the light most favorable to Defendants) to support their inequitable conduct action.[1] The allegations set forth that specific individuals (who) withheld information and made false statements (what) during proceedings before the USPTO (when and where) that caused the patent examiner to issue patents that would otherwise not have issued if more information had been provided and Plaintiff's representatives had been fully truthful (how). These facts are sufficient to survive this motion because the facts allow the Court to reasonably infer that the named individuals acted with the requisite state of mind. Therefore, Plaintiff's Motion to Strike Affirmative Defense of Inequitable Conduct and Motion to Dismiss for Failure to State a Claim re: Counterclaim for Declaratory Judgment of Unenforceability (Doc. No. 128) will be denied.

### B. Inequitable Conduct Should be Bifurcated from Infringement

After review of the record to this point and the standard of proof required, the Court finds that Defendants' affirmative defense and counterclaim of inequitable conduct should be bifurcated from Plaintiff's claims of infringement pursuant to Federal Rule of Civil Procedure 42(b) and stayed until a final determination on infringement and related claims is reached.

Federal Rule of Civil Procedure 42(b) provides that a Court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims or third-party claims "for convenience, to avoid prejudice, or to expedite and economize." Although bifurcation is the exception, not the rule, in civil cases, after consideration of this case, a separate trial for

---

[1] At this stage, the Court cannot address Plaintiff's arguments as to the veracity of Defendants' factual averments, the existence of evidence that allegedly rebuts Defendants' facts, or the "misleading" nature of the inequitable conduct claim. See Doc. No. 135. It is also of no moment that Defendants may have now "change[d] positions" in their briefs because the Court's current inquiry is solely focused on the factual averments contained with the Amended Answer. Doc. No. 124.

infringement and inequitable conduct would serve all three purposes of Rule 42(b). *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) (the decision to bifurcate "must be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance."). The Court makes this determination mindful of the considerations of whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented. *See SenoRx, Inc., v. Hologic, Inc.*, 920 F.Supp.2d 565, 565 (D.Del. Jan. 30, 2013) *citing Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed.Cir. 1987).

Courts across this country have approached inequitable conduct counterclaims and case management in various ways:

- Bench trial on inequitable conduct followed by a jury trial on infringement (*Agfa Corp. v. Creo Products, Inc.*, 451 F.3d 1366 (Fed.Cir. 2006));

- Jury trial on invalidity and infringement conducted simultaneously with a bench trial on inequitable conduct (evidence on inequitable conduct presented after the jury was dismissed for the day) (*Trading Techn. Int'l, Inc. v. eSpeed, Inc.*, 750 F.Supp.2d 962 (N.D. Ill. 2010)(*see also eSpeed, Inc. v. Brokertec USA, LLC*, 480 F.3d 1129 (Fed.Cir. 2007);

- Jury trial on invalidity and unenforceability held; Judge weighed evidence from this trial to determine unenforceability (*Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed.Cir. 2007);

- Inequitable conduct claim was tried by the Judge while the invalidity decision was on appeal to the United States Court of Appeals for the Federal Circuit (*Se-Kure Controls, Inc. v. Vaguard*, 02-cv-3767 (N.D. Ill. Dec. 18, 2009);

- Resolution of Defendants' inequitable conduct counterclaim stayed pending appeal of validity to the United States Circuit Court for the Federal Circuit (*High Concrete Structures, Inc. v. New Enterprise Stone & Lime Co., Inc.*, 2003 WL 22358869 (E.D.Pa. May 27, 2003) (reversed and remanded on other grounds 377 F.3d 1379 (Fed.Cir. 2004);
- Court held a jury trial on invalidity and then damages, which was to be followed by motions practice on inequitable conduct (*Marine Polymer Technologies, Inc. v. HemCon, Inc.*, Civil No. 06-cv-100 (D. NH. Apr. 8, 2010) later appealed on other grounds 672 F.3d 1350 (Fed.Cir. 2012)).

Patent infringement cases are amongst the most factually and legally complex civil cases. As currently situated, a jury will have to determine if Defendants' technologies infringe any of Plaintiff's patents and the Court will need to (simultaneously) rule whether Plaintiff's alleged conduct bars Plaintiff's claims. In order to prepare this case for trial, Counsel will need to, amongst over tasks: complete complex discovery; file any appropriate dispositive motions; compile evidence that will be presented at trial; depose and prepare witnesses; draft preliminary and final jury instructions; and file motions in limine. The Court will also have to make rulings and issue opinions on these matters. Bifurcation will streamline the preparation of this case for trial because Counsel and the Court will be able to focus on the record related to infringement, rather than all of the evidence of record. As such, much of the facts that are contested related to inequitable conduct will not be at issue in the first trial. This will focus pretrial preparation, which is convenient to both the Court and Counsel, and will aid the jury during any eventual trial.

This Court's experience, including in a patent case, has been that juries prefer to only hear evidence directly related to their determination of distinct issues. *See University of*

*Pittsburgh of the Commonwealth System of Higher Education v. Varian Medical Systems, Inc.*, 08-cv-1307. Extraneous evidence increases the risk that the jury will become confused or unfocused. Per applicable case law from the United States Court of Appeals for the Federal Circuit, inequitable conduct is an issue for the Court, not a jury. *Gardco*, 820 F.2d 1209; *Agfa Corp.*, 451 F.3d at 1375; *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed.Cir. 1993). The Court's experience in preparing for bench trials has also been that pretrial practice is improved when counsel can focus on the one or two most important issues. As currently situated, Counsel and the Court would need to simultaneously expend time, resources, and energy on two distinct issues: infringement and inequitable conduct and the jury would hear evidence related to both determinations. This would prejudice the Parties and may serve to delay the just, speedy, and inexpensive resolution of their disputes. See Fed. R. Civ. P. 1.

The Court is mindful of the need to avoid any prejudice that may result from bifurcation. If the trial is not bifurcated, the jury would hear evidence related to Plaintiff's alleged conduct, which present the serious risk of prejudice to Plaintiff. This situation would present the possibility that the jury would be so prejudiced against Plaintiff that the jurors would be incapable of rendering a fair and impartial verdict as to infringement. There is also a risk of potential confusion if the jury hears evidence of both infringement and inequitable conduct. This risk does not need to occur.

The issues of infringement and inequitable conduct are readily separable because they are "distinct and without commonality either as to claims or in relation to the underlying fact issues." *See Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1322 (Fed.Cir. 2006). In its most basic form, infringement asks the factfinder to determine what Defendants' technology is and how it compares to Plaintiff's technology; while inequitable conduct raises

12

issues as to what Plaintiff's representatives and their Counsel did before the USPTO. There may be some overlap in the evidence that will be presented before a jury comes to a verdict or the Court rules, but the Court believes that the majority of the evidence is/will be distinct. As noted by a fellow United States District Judge, "there is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court." *Japan Cash Machine Co. Ltd. V. MEI, Inc.*, 2008 WL 5051245 (D. Nev. Nov. 20, 2008). To the extent that there is any overlap in the evidence, there will not be a need to repeat such evidence during any bench trial on inequitable conduct because the Court will have heard the evidence while it presides over the jury trial on infringement.

Bifurcation will not prejudice Defendants. Instead, bifurcation will allow Defendants to focus on their defenses to infringement. Further, bifurcation may eliminate the need for a trial on inequitable conduct. If a jury finds that Defendants' technologies do not infringe any of Plaintiff's patents, this would obviate the need for any bench trial on inequitable conduct. While Defendants may prefer this Court to try the issue of inequitable conduct before infringement, the Court finds that it is more efficient and more just to try infringement first. This is consistent with the United States Supreme Court's holding that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determinations of equitable claims." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). Holding the jury trial on infringement first allows Plaintiff to have their issues heard by a jury. Like other Courts, this Court does not wish to impinge on this right by holding a bench trial on inequitable conduct before the jury trial on infringement. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc.s, Inc.*, 2007 WL 3208540 (D.Ariz. 2007).

Bifurcation will not cause undue delay of the resolution of the Parties' disputes because it allows Plaintiff's claims and eight out of nine of Defendants' affirmative defenses and counterclaims to be adjudicated as scheduled. This Court prepares cases for trial through an expedient pretrial process. If necessary based upon the jury's verdict, the Court will enter orders providing for the orderly and expedient resolution of Defendants' inequitable conduct claim. Therefore, there is no risk of "considerable delay" due to separate trials and separate pretrial proceedings. *See Laitram Corp. v. Hewlett-Packard Co.*, 791 F.Supp. 113, 114 (E.D. La. 1992).

Further, bifurcation prevents the need to disturb Plaintiff's retention of John C. Thomas as lead trial counsel in this matter. Thomas is very familiar with this case and has been working to prepare Plaintiff's claims of infringement for a jury trial since at least October 2012. If Plaintiff had to obtain new lead trial counsel, this may cause a delay in the Court's current scheduling order. This would prejudice the Parties. Bifurcation protects Plaintiff to the extent that Defendants' addition of inequitable conduct (approximately 19 months after litigation was initiated) may have been designed to bar Thomas' continued representation. See Doc. No. 129, 22-24.

In sum, bifurcation of these distinct issues will allow Counsel, the jury, and the Court to focus on the key disputes at issue and to prepare for an expedient resolution of the matters at hand.

**V. Conclusion/Order**

Defendants have sufficiently pled a claim for inequitable conduct based upon applicable case law. However, inequitable conduct will be bifurcated from Plaintiff's claims of infringement and other related claims and stayed until these claims are resolved by a jury. This procedure comports with Federal Rule of Civil Procedure 42(b) and promotes judicial economy.

This procedure will not prejudice the Parties or impede the just, speedy, and inexpensive resolution of their dispute. Therefore, the following Order is entered:

AND NOW, this 19th day of August, 2014, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion to Strike Affirmative Defense of Inequitable Conduct; Motion to Dismiss for Failure to State a Claim re: Counterclaim for Declaratory Judgment of Unenforceability due to Inequitable Conduct (Doc. No. 128) is **DENIED**; and

2. All proceedings and required filings as to Defendants' Affirmative Defense of Inequitable Conduct and Counterclaim for Declaratory Judgment of Unenforceability due to Inequitable Conduct are **STAYED** until resolution of Plaintiff's claims of infringement and related claims by a jury.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties